DECISION
{¶ 1} Relator, Robert A. Patrick, commenced this original action in mandamus seeking a writ ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting such compensation. Pursuant to Civ.R. 53 and Loc.R. 12(M) of this court, this matter was referred to a magistrate, who has issued a decision, including findings of fact and conclusions of law. (Attached as Exhibit A.) The magistrate *Page 2 
determined that this court should grant a writ ordering the commission to vacate its order denying relator's PTD application and to issue a new order adjudicating relator's PTD application.
 {¶ 2} The commission has filed an objection to the magistrate's decision contending that "the Magistrate erred in concluding that the commission found `suggested' unidentified transferable skills."
 {¶ 3} The magistrate found that the commission order failed to comply with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and found that the order entered by the commission should be vacated and that a writ should issue ordering the commission to make a new adjudication and order as to relator's application for PTD compensation in a manner consistent with the magistrate's decision.
 {¶ 4} After an independent review of the evidence and the applicable law, we agree with the magistrate's determination. The magistrate relied upon several decisions of the Supreme Court of Ohio, including State exrel. LeVan v. Young's Shell Serv. (1997), 80 Ohio St.3d 55, which stated in part:
 * * * At issue is the commission's nonmedical analysis which we find deficient in two respects.
 The first involves the commission's treatment of claimant's work history, which is little more than a recitation of claimant's past jobs. The commission's attempt to add a substantive dimension to this recitation by using the phrases `wide and varied' and `flexibility and adaptability' fails. Such hollow phrases are reminiscent of the boilerplate previously decried in Noll * * *.
 {¶ 5} This is not a case where this court finds that the relator has a clear legal right to PTD compensation. Rather, it is a case where we find that the relator is entitled to *Page 3 
an adjudication and order that fully complies with Noll and we issue the requested writ to that extent.
 {¶ 6} The commission's objection to the magistrate's report is overruled. The magistrate's decision, including the findings of fact and conclusions of law, are adopted as those of the court, and we grant a limited writ of mandamus ordering respondent commission to vacate its order denying relator's PTD application and to issue a new order adjudicating relator's PTD application in a manner consistent herewith.
Objection overruled; limited writ granted.
 KLATT and McGRATH, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 7} In this original action, relator, Robert A. Patrick, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact: *Page 5 {¶ 8} 1. On May 22, 1998, relator sustained an industrial injury while employed as a "journeyman ironworker" for respondent Whitacre Engineering Company, a state-fund employer. The industrial claim is allowed for "lumbosacral strain; aggravation of preexisting herniated disc L4-5; depressive disorder and pain disorder, chronic, associated with both psychological factors and a general medical condition," and is assigned claim number 98-407809.
 {¶ 9} 2. On May 16, 2005, relator filed an application for PTD compensation. The PTD application form asks the applicant for information regarding his education. Relator indicated that he graduated from high school in 1966. The application form asks the applicant to identify any "trade school or special training" received. Relator wrote: "Associate Degree in Engineering, and Iron Worker Apprenticeship Program."
 {¶ 10} The PTD application form also asks the applicant for information regarding his work history. Relator indicated that he worked as a "journeyman ironworker" in the construction industry from January 1969 to May 1998, as a "draftsman" from March 1968 to January 1969, as a "welder" from September 1966 to March 1968, and as a "mechanic" at a bowling alley from 1964 to June 1966.
 {¶ 11} 3. On July 13, 2005, at the commission's request, relator was examined by Robert L. Byrnes, Ph.D., who examined only for the allowed psychological conditions of the claim. In his four-page narrative report, Dr. Byrnes opined that "this examinee's overall impairment, associated with his allowed mental condition, is mild and I assign an 18% whole person impairment for his allowed mental condition only."
 {¶ 12} 4. On July 13, 2005, Dr. Byrnes completed an occupational activity assessment form. The form poses a two-part query to the examining psychologist: *Page 6 
 Based on the impairment resulting from the allowed/alleged psychiatric/psychological condition(s) only, can this injured worker meet the basic mental/behavioral demands required:
 To return to any former position of employment?
 To perform any sustained remunerative employment?
 {¶ 13} In response, Dr. Byrnes marked "no" to the first query and "yes" to the second query.
 {¶ 14} Dr. Byrnes further wrote: "This claimant's allowed mental condition, in and of itself[,] would not prevent his return to work in non-stressful positions for which he is otherwise qualified."
 {¶ 15} 5. On August 22, 2005, at the commission's request, relator was ex-amined by Jess G. Bond, M.D., who wrote:
 * * * Based solely on consideration of the allowed condition(s) within my speciality [sic], the objective findings at the time of examination, and the AMA's Guide to the Evaluation of Permanent Impairment, Fourth edition, it is my estimation of permanent partial impairment percentage for:
 The claim allowances: Lumbosacral strain; aggravation of pre-existing herniated disc L4-5[.]
 The Injury Model utilizing Diagnosis-Related-Estimates (DRE) for the lumbosacral spine (page 102), Category (V), which equated to a whole person permanent partial impairment of: 25%.
 {¶ 16} 6. On August 22, 2005, Dr. Bond completed a physical strength rating form on which he indicated that relator was capable of "sedentary work."
 {¶ 17} 7. In support of his PTD application, relator submitted a vocational report from Barbara E. Burk dated October 21, 2005. In her five-page report, Burk concludes:
 Robert Patrick is a person who is at the high end of the middle age category, has a high school education and a very strong, continuous work record as an Ironworker (DOT title *Page 7 
of Structural-Steel Worker). This is the only occupation he performed throughout the past relevant time period. This is customarily heavy work activity that is skilled. These skills do not transfer to sedentary work. All sedentary work would be performed in a very different work environment and would require significant vocational adjustment for someone with this employment history. Mr. Patrick has been out of the competitive labor market since 1998. He had a work-related accident on May 22, 1998. * * *
 * * *
 When considering the effects of Mr. Patrick's age, education, work history, absence from the labor market and the opinion of Jess Bond, M.D., it is my professional opinion that Mr. Patrick is not a candidate for sustained remunerative employment activity. It is the combination of medical and non-medical factors that leads to this conclusion. Dr. Bond limits Mr. Patrick to sedentary work. Sedentary work is the most restrictive category and represents approximately 10% of all occupations found in our labor market. This 10% includes occupations for which this claimant does not have skills. Consequently, there is an extremely narrow occupational base. When this factor is combined with the effects of non-medical factors including his age, past relevant work activity, absence from the labor market, probable lack of job search knowledge and job interviewing skills, Mr. Patrick is removed from the competitive labor market.
 When considering the effects of Mr. Patrick's age, education, work history, absence from the labor market and the opinion of Robert L. Byrnes, it is my professional opinion that Mr. Patrick is not a candidate for sustained remunerative employment activity. It is the combination of medical and non-medical factors that removes him from work activity. Dr. Byrnes opined he could not perform his former position of employment. He stated, "This claimant's allowed mental condition, in and of itself[,] would not prevent his return to work in non-stressful positions for which he is otherwise qualified." He, therefore, is not capable of returning to his past work or any closely related occupation. When considering the effects of non-medical factors along with the restrictions imposed by Dr. Byrnes, it is my professional opinion he would be unsuccessful in returning and sustaining competitive employment. He would not be able to transfer any skills acquired and would need to make a major *Page 8 
vocational adjustment. It is highly improbable that someone of his age with this work history would successfully accomplish this. He is further limited by a lengthy absence from work activity and probable lack of job search knowledge and interview skills.
 {¶ 18} 8. Following a May 16, 2005 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
 This order is based upon the report from Dr. Bond and Dr. Byrnes.
 * * *
 * * * [B]ased upon the opinions of Dr. Bond and Dr. Byrnes who combined examined the Injured Worker on all of the allowed conditions for which the Injured Worker's sole industrial injury is currently recognized, the Staff Hearing Officer concludes on a whole that the Injured Worker is medically capable of performing some sustained remunerative employment i.e. sedentary work in a non-stressful, non-demanding environment. Therefore, the Staff Hearing Officer finds that a discussion of the Injured Worker's non-medical disability factors are now in order.
 The Injured Worker is 57 years of age and has a high school education. The Injured Worker has furthered his education by obtaining a[n] associate degree in engineering and also participated and completed an apprenticeship program in order to be a certified iron worker. The Injured Worker indicates on his IC-2 application on file as well as testimony at hearing the ability to read, write, and do basis [sic] math. The Injured Worker's work history consists of working as a bowling alley mechanic early on in his working career for approximately three years, a welder at Highway Machine Company for approximately three years and a draftsman at Republic Steel for approximately two years performing such duties as making detailed drawings of material sold by steel mills, but primarily worked the bulk and latter portion of his working career as [an] iron worker for approximately 30 years through the local union performing such duties as installing rebar, welding, installing steel doors as well [as] operating heavy equipment.
 Ms. Burke [sic], performed a vocational evaluation of the Injured Worker on behalf of the Injured Worker. Upon *Page 9 
reviewing the Injured Worker's work history, age, and education, she found no work experience would transfer to sedentary work. However, upon reviewing the Injured Worker's work history, age, and education, the Staff Hearing Officer is not persuaded nor concurs with Ms. Burke's [sic] opinion and finds that the Injured Worker's non-medical disability factors on a whole do not have a negative impact on the Injured Worker's ability to work or be retrained or rather are to be viewed as some what positive factors from a vocational viewpoint.
 The Staff Hearing Officer finds that the Injured Worker is 57 years of age. Said age is an age that is definitely a barrier to employment, but certainly is not a barred set age leaves the Injured Worker 5 to 10 years of working life ahead of him, and concludes that given the Injured Worker the benefit of doubt that the Injured Worker's age is an unfavorable factor in his re-employment potential.
 The Staff Hearing Officer finds that the Injured Worker's education is a positive factor. The Injured Worker's high school plus education noting that the Injured Worker did obtain his associates degree in engineering as well as complete an apprenticeship program for iron workers may not necessary [sic] provide the Injured Worker with present time skills, but is more than adequate for the Injured Worker to meet the basic demands of a number of entry-level occupations and is consistent with the ability to perform and/or learn some skill as well as unskilled work on a sedentary or light duty basis. Furthermore, the Staff Hearing Officer finds that the Injured Worker's high school plus education in and of itself does not indicate a lack of intellectual ability to be retrained, as the Injured Worker indicates on his IC-2 application as well as testimony at hearing his ability to read, write, and do basis [sic] math.
 Furthermore, the Injured Worker's work history is also definitely a positive factor. The Injured Worker working as a bowling alley mechanic[,] welder, draftsman, as well as a[n] iron worker indicates employment in occupations predominately classified as skilled positions which indicates and suggest that the Injured Worker has the skills and qualifications to perform other entry level occupations based upon his prior skilled work history as well as high school plus education. *Page 10 
 In summary, the Staff Hearing Officer concludes that the Injured Worker's disability factors on the whole favor re-employment ability, i.e. that the education and work history factors out weigh the age factor and find that the Injured Worker can at least be retrained to perform other entry level occupations based upon his high school plus education and skilled work history.
 Therefore, based upon the physical restrictions outlined by Dr. Bond as well as Dr. Byrnes who indicate that the Injured Worker is capable of performing sedentary work in a non-stressful, non-demanding work environment along with the Injured Worker's skilled work history and high school plus education concludes on a whole that the Injured Worker can at least be retrained to perform some other occupation and is therefore is not permanently totally disabled and not precluded from all sustained renumerative [sic] employment.
 {¶ 19} 9. On July 27, 2006, relator, Robert A. Patrick, filed this mandamus action.
Conclusions of Law: {¶ 20} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 21} For its threshold medical determination, the commission, through its SHO, determined that relator is medically able to perform some sustained remunerative employment, i.e., "sedentary work in a non-stressful, non-demanding work environ-ment." That determination is based upon the reports from Drs. Bond and Byrnes.
 {¶ 22} Here, relator does not challenge the commission's threshold medical determination, nor does he challenge the medical reports of Drs. Bond and Byrnes. However, relator does challenge the commission's nonmedical analysis.
 {¶ 23} Here, relator's challenge to the commission's nonmedical analysis is focused on the commission's analysis of his work history which is set forth primarily in the paragraph stating: *Page 11 
 Furthermore, the Injured Worker's work history is also definitely a positive factor. The Injured Worker working as a bowling alley mechanic[,] welder, draftsman, as well as a[n] iron worker indicates employment in occupations predominately classified as skilled positions which indicates and suggest that the Injured Worker has the skills and qualifications to perform other entry level occupations based upon his prior skilled work history as well as high school plus education.
 {¶ 24} Relator contends that the conclusions drawn from his work history violate State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. The magistrate agrees.
 {¶ 25} In State ex rel. Pierce v. Indus. Comm. (1997),77 Ohio St.3d 275, 276-277, a case cited by relator, the commission denied PTD compensation stating:
"Claimant is 62 years old, has a 10th grade education, and a work history as a foreman ironworker, and journeyman ironworker. His treatment has been strictly conservative. He was able to continue working after his injury for over 6 years. Commission specialist Dr. McCloud has indicated that the claimant as a 30% permanent partial impairment, has no neurological or radicular changes, and would have restrictions against lifting over 20 pounds. Based on the claimant's conservative treatment history, his ability to continue working for over 6 years after the date of injury, the conclusion of Dr. McCloud that the claimant has a minimal impairment of 30% with no neurological or radicular changes, and considering his past work history which includes supervisory experience, it is found that the claimant does possess skills which would transfer to similar or lighter duty employment, and that he should be able to obtain such employment, especially following participation in a reconditioning or work hardening program. Therefore, it is found that the claimant is not permanently precluded from returning to any type of sustained, remuenative [sic] employment."
 {¶ 26} The Pierce court found that the commission's analysis of the work history violated Noll. The Pierce court explained:
 The commission's discussion of claimant's work history is also inadequate. With increasing, and disturbing, frequency we are finding that no matter what claimant's employment *Page 12 
background is, the commission finds skills — almost always unidentified — that are allegedly transferable to sedentary work. In some cases, depending on the claimant's background, these skills are self-evident. In many cases, they are not.
 In State ex rel. Haddix v. Indus. Comm. (1994), 70 Ohio St.3d 59, 61, * * * we held:
 "The commission determined that claimant's prior work as a gas station attendant and press operator provided him with skills transferable to sedentary employment. The commission's order, however, does not identify what those skills are. Such elaboration is critical in this case, since common sense suggests that neither prior work is, in and of itself, sedentary."
 The present claimant was an ironworker — a position that is neither sedentary nor light duty. Again, however, the commission found skills transferable to light work, without specifying what those skills were. The reference to supervisory skills, without more, is not enough in this case, given claimant's tenure as a working, as opposed to purely administrative, supervisor.
Id. at 277-278.
 {¶ 27} In State ex rel. LeVan v. Young's Shell Serv. (1997),80 Ohio St.3d 55, 56, another case cited by relator, the commission denied PTD compensation. After determining that Mr. LeVan was able to engage in "sedentary to light work," the commission explained:
 "Although his sixth grade education limits him to non-intellectual work, his youth (age 43) leaves claimant with over 20 productive work years in the labor force, while his wide and varied unskilled, semi-skilled, and skilled work history as a laborer, cab driver, trash collector, service station attendant, painter and mechanic all indicate a flexibility and adaptability to various kinds of work environments that would be assets in performing sedentary to light work for which he retains the physical capacity. Accordingly, claimant is held not to be permanently and totally disabled." *Page 13 
 {¶ 28} The LeVan court held:
 We do find that the commission abused its discretion by crafting an order that does not meet Noll, supra. At issue is the commission's nonmedical analysis, which we find to be deficient in two respects.
 The first involves the commission's treatment of claimant's work history, which is little more than a recitation of claimant's past jobs. The commission's attempt to add a substantive dimension to this recitation by using the phrases "wide and varied" and "flexibility and adaptability" fails. Such hollow phrases are reminiscent of the boilerplate previously decried in Noll, and simply restate what the earlier recitation had already revealed — that claimant had worked many jobs prior to injury. These phrases do not explain how claimant's occupational history enhances his reemployment potential.
 We also find the commission's explanation to be inadequate for a second reason. The cornerstone of the commission's order is the future — the many years of work-force participation available to one of claimant's age. The commission's order, however, merely says that this availability exists. It does not address whether claimant is, or could be, vocationally capable of taking advantage of it. The order says nothing about claimant's retraining or rehabilitation potential.
 We conclude, therefore, that the commission's order violates Noll. * * *
Id. at 57.
 {¶ 29} In State ex rel. Bruner v. Indus. Comm. (1997),77 Ohio St.3d 243, 244, a case not cited by the parties, the commission denied PTD compensation explaining:
 "Claimant is 59 years old, has a general equivalency diploma and his work history consists of maintenance work and window washer. Claimant's treatment has been conservative consisting primarily of physical therapy for relief of his back pain. Claimant has not had surgery or been hospitalized for any of his allowed conditions[.] Dr. Fallon, Commission P.M.R. Specialist, opined that claimant is capable of engaging in sustained remunerative employment. Dr. Fallon indicated that claimant's impairment is 25% and that *Page 14 
claimant is restricted from lifting in excess of 25 lbs. He stated that claimant is capable of handling standing and walking activities. After considering the above, the Commission finds that the allowed conditions do not render claimant permanently and totally disabled. Specifically, the report of Dr. Fallon reflects that claimant is only restricted to lifting no more than 25 lbs. and thus could perform sedentary or light duty employment. Despite claimant's work experience, the Commission finds that claimant has sufficient vocational skills to obtain or be trained for sedentary or light employment consistent with the 25 lbs. lifting restriction. The Commission particularly relies upon claimant's attainment of a GED and the fact that there are positions available in the labor market at the unskilled sedentary and light level. Accordingly, for the above, claimant's Application for Permanent Total Disability is denied."
 {¶ 30} The Bruner court found a Noll violation, explaining:
 We are disturbed by the increasing frequency with which the commission has denied permanent total disability compensation based on "transferable skills" that the commission refuses to identify. This lack of specificity is even more troubling when those "skills" are derived from traditionally unskilled jobs. As such, we find that the commission's explanation of claimant's vocational potential in this case is too brief to withstand scrutiny.
Id. at 245.
 {¶ 31} Ohio Adm. Code 4121-3-34 sets forth the commission's rules applicable to the adjudication of PTD applications. Ohio Adm. Code4121-3-34(B) sets forth applic-able definitions.
 {¶ 32} Ohio Adm. Code 4121-3-34(B)(3)(c)(iv) states:
 "Transferability of skills" are skills which can be used in other work activities. Transferability will depend upon the similarity of occupational work activities that have been performed by the injured worker. Skills which an individual has obtained through working at past relevant work may qualify individuals for some other type of employment. *Page 15 
 {¶ 33} Stating that his prior skilled work suggests that relator "has the skills and qualifications to perform other entry level occupations," strongly suggests the transferability of skills from the former position of employment and other prior employment. However, those skills are not identified in the SHO's order. The failure to identify those skills is a violation of Noll. Pierce, LeVan and Bruner.
 {¶ 34} The magistrate recognizes that, in a later paragraph, the SHO concludes that relator "can at least be retrained to perform other entry level occupations based upon his high school plus education and skilled work history." However, that the SHO places additional reliance upon education does not eliminate the problem of the failure to identify the skills that are suggested to be transferable.
 {¶ 35} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order denying relator's PTD application and, in a manner consistent with this magistrate's decision, enter a new order adjudicating relator's PTD application. *Page 1